† MERRILL *versus* IRELAND.

By § 26, of c. 91, R. S., it is provided, that no conveyance of any estate in fee simple, fee tail or for life, and no lease for more than seven years from the making thereof, shall be good and effectual against any person, other than the grantor, his heirs and devisees, *and persons having actual notice thereof,* unless it is made by a deed recorded.

Where one in possession makes a conveyance of the premises, but in his deed inserts this clause, — "the said land is under an incumbrance of two hundred dollars, and interest from September last," and furthermore informs the grantee that they were under an incumbrance to J. L., and would be payable in September next, and interest: —

*Held,* that this was sufficient notice to give effect, as against said grantee, to a prior unrecorded deed to J. L.

And where *such grantee,* not being in possession, assigns the deed to demandant, and, in fact, was acting for him in the negotiation, the demandant can claim no rights as against the unrecorded deed.

ON REPORT from *Nisi Prius*, HATHAWAY, J., presiding.

WRIT OF ENTRY, to recover possession of a parcel of land in Corinna. The general issue was pleaded.

The demandant introduced a quitclaim of the premises, from one Sumner J. Pratt to John Underwood, dated March 10, 1851, and recorded on the 18th of the same month, in which the consideration was $500,00. After the description of the premises in this deed, it contained the following:—"The said land is under an incumbrance of two hundred dollars, and interest from September last."

On Aug. 14, 1851, Underwood, on the back of said deed, did grant and assign "the premises, within conveyed to me, and all my right, title, interest and estate in and unto the same," to the demandant, his heirs and assigns forever. This assignment was recorded, Dec. 13, 1854.

The tenant relied upon a warrantee deed of the premises, from said Pratt to John Lyford, for the consideration of $200, dated Sept. 24, 1850, recorded Sept. 29, 1851, with proof that the same was paid to Pratt, and at the same time Lyford gave him a writing to reconvey the premises, on payment of that sum and interest, in one year.

He also introduced a quitclaim deed of the premises from said Lyford to Samuel and Sumner Burrill, of Oct. 6, 1851, recorded Jan. 6, 1852, and proved they paid him therefor $275,00, also a deed of the same, from said Burrills to himself, dated Oct. 26, 1852, and recorded April 26, 1853.

By the magistrate, before whom Pratt's deed to Underwood was acknowledged, he proved, (if legal so to do,) that Pratt, at that time, informed Underwood that the premises were under an incumbrance to John Lyford, of St. Albans, which would be payable in Sept., then next, with interest.

It also appeared, by the deposition of Pratt, that notice, at the time of conveyance to Underwood, was given to him of Lyford's claim by a warrantee deed.

And, from the same source, there was evidence tending to show that the consideration of the conveyance was for an

interest in a patent right for a cheese press, and that the same was of no value.

The tenant also put in a letter of plaintiff's, as follows:

"Montpelier, Vermont, July 29, 1851.

"Mr. Sumner J. Pratt.

"Sir :—Your notes and deed to John Underwood have been assigned by him to me. I must raise money on them, but think it due to you, in justice and courtesy, to offer you the privilege of "shaving" your own notes. Please write me by return mail, if practicable, what you will give me, in money, for the whole. In case of your inability, very likely you can get some one to aid in the advancement, so that you can make something.                    Respectfully,

"Ferrand F. Merrill.

"P. S.   I should say, in justice to Mr. U., that the notes have not been "trafficked" to me, but assigned, in pursuance of an arrangement made before your trade, by which I was to hold every thing for security, &c., to me."

The court were authorized to draw inferences, from the evidence admissible, as a jury might, and render a judgment according to law.

*D. D. Stewart,* for tenant.

*Wakefield,* with whom was *Kent,* for demandant.

RICE, J. — Both parties claim title under Sumner J. Pratt. Sept. 24, 1850, Pratt conveyed the demanded premises by deed of warranty to John Lyford, and at the same time took back an obligation, in writing, the condition of which was, that if said Pratt should pay a note of that date, for two hundred and twenty-four dollars, in one year, the land should be re-conveyed. This deed was not registered until Sept. 29, 1851. Lyford conveyed the same premises by deed of quitclaim to S. & S. Burrill, Oct. 6th, 1851, and the Burrills conveyed to the tenant by deed of warranty, Oct. 26, 1852.

Pratt also conveyed the premises by deed of quitclaim to John Underwood, March 10, 1851, which deed was record-

ed, March 18, 1851. Immediately following the description in this deed are the following words. — " The land is under an incumbrance of two hundred dollars and interest from Sept. last."

On the 14th of August, 1851, Underwood assigned to the demandant the deed which he received from Pratt, with certain notes from the same person. The assignment was upon the back of the original deed, and contains the following language, " do hereby grant, assign, release and convey unto the said Merrill, the premises within conveyed to me, and all my right and interest and estate in and unto the same." This assignment contains no covenants of seizin, possession or title, in the assignor.

Section 26, c. 91, R. S., provides, that no conveyance of any estate in fee simple, fee tail, or for life, and no lease for more than seven years from the making thereof, shall be good and effectual against any person, other than the grantor, his heirs and devisees, *and persons having actual notice thereof*, unless it is made by a deed recorded, as provided in this chapter.

The first question presented is, had Underwood actual notice of the existence of the deed of Pratt to Lyford, at the time Pratt made the quitclaim to him? That he had such notice there can be no doubt. The recitation in the deed, and the testimony of Cutler and Pratt, is conclusive on that point.

Does the demandant stand in any better condition than Underwood, his assignor? We think not. The actual possession of the premises has been in the tenant and his grantors. Underwood had no possession under his deed, and his deed, on its face, recited that there was an incumbrance upon the land. These facts the demandant knew, at the time of the assignment to him. And still further, it appears from his letter to Pratt, dated July 29, 1851, that Underwood was really acting for him, and in his behalf.

In that letter, he says, " your notes and deed to John Underwood have been assigned by him to me." And in a

postscript to the same letter adds, "I should say in justice to Mr. U., that the notes have not been 'trafficked' to me, but assigned in pursuance of an arrangement made before your trade, by which I was to hold everything for security, &c., to me."

In view of these facts, we think the demandant cannot claim to be exempted from any notice which Underwood was proved to have had.              *Plaintiff nonsuit.*

TENNEY, J., concurred in the result only, and remarked upon that part of the opinion wherein inquiry is made, whether the demandant stands in *any better condition* than Underwood; that Underwood was informed *by the deed* which he took from Pratt, that "the land was under an incumbrance of $200, and interest from September last;" and Cutler testified, that at the time he made the deed, Pratt informed Underwood that the premises in question were under an incumbrance of $200, to John Lyford, of St. Albans, and that said incumbrance would be payable in Sept. then next. The demandant is not shown to have had the information which Underwood derived from Pratt, detailed in Cutler's testimony. But the deed to his grantor informed him that there was an incumbrance of $200. That incumbrance must have been under some deed, though none was recorded from Pratt; and when the demandant took a deed from Underwood, of "all my right, title and interest and estate in and unto the same," *he must be treated as expressly limited to the rights which his grantor then held.*

I do not find that "the actual possession of the premises has been in the tenant and his grantors. Underwood had no possession under his deed," as stated in the opinion, is shown by the case.